***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE 388 ROUTE 22 READINGTON HOLDINGS, LLC,<br><br>Debtor. | Case No. 18-30155 (KCF)<br><br>**Chapter 7 Bankruptcy** |
| SB BUILDING ASSOCIATES LIMITED PARTNERSHIP,<br><br>Appellant,<br><br>v.<br><br>IRON MOUNTAIN INFORMATION MGMT., LLC<br><br>Appellee. | Civil Action No. 3:20-cv-02954-FLW<br><br>**OPINION** |

**WOLFSON, Chief Judge**:

This matter arises out of a dispute over attorneys' fees. In the proceedings below, the Bankruptcy Court awarded Iron Mountain Management, LLC ("Appellee" or "Iron Mountain"), the former secured creditor of SB Building Associates Limited Partnership ("Appellant" or "SB"), $2,375,288.01, after SB obtained $3,200,000 in an auction sale of 388 Route 22 Readington ("the Property") conducted by its trustee, Bunce D. Atkinson ("Trustee" or "Atkinson"). The award represents Iron Mountain's full secured claim plus interest, costs, and attorneys' fees related to various actions against SB to recover the value of its mortgage on the Property. SB appeals the award on the grounds that the Bankruptcy Court's decision is contrary to *In re A & P Diversified Technologies Realty, Inc.*, 467 F.3d 337, 341 (3d Cir. 2006), which stands for the proposition that

1

a foreclosure judgment terminates a mortgage, and even if it does not, Iron Mountain's request for attorneys' fees is unreasonable. SB also argues that the Bankruptcy Court improperly charged fees related to a sheriff's sale to SB rather than Iron Mountain. For the reasons set forth below, I find that the parties entered into an agreement for attorneys' fees after the entry of the foreclosure judgment, but remand for further proceedings as to the reasonableness of Iron Mountain's request for the paralegal fees, and who must bear the cost of the sheriff's fee. Accordingly, the Bankruptcy Court's decision is **AFFIRMED** in part and **VACATED** in part. The matter is remanded for further proceedings consistent with this Opinion.

## I.  FACTUAL AND PROCEDURAL HISTORY

Iron Mountain is the former secured creditor of SB. In 2007, Iron Mountain sold SB the Property, located at 388 Route 22 Readington, in exchange for a purchase money mortgage. SB defaulted on that mortgage in 2009, giving rise to the present dispute. On July 7, 2009, to collect on its mortgage, Iron Mountain initiated a foreclosure proceeding in New Jersey Superior Court, which resulted in a foreclosure judgment against SB for $1,658,021.90, entered on January 28, 2011. The Superior Court increased the judgment to $1,722,027.81 on March 16, 2011. Iron Mountain then scheduled a sheriff's sale for July 31, 2013. On the day of the sale, however, SB filed for Chapter 11 Bankruptcy, automatically staying the foreclosure. SB submitted a reorganization proposal on October 29, 2013.

After considerable negotiation, on October 7, 2015, Iron Mountain and SB agreed to a repayment plan (the "Plan"), the terms of which the Bankruptcy Court set forth in the Order Confirming Second Modified Plan of Reorganization ("Confirmation Order"). The Pan provided for $2,200,000 in total payments to Iron Mountain for its secured claim, including a $1,325,000 lump sum payment due before January 15, 2016. The Plan also provided that, if SB failed to make

such a payment, then it must make a balloon payment before January 1, 2018, for all outstanding principal and interest.

SB did not make either the lump sum or the balloon payment. According to the Confirmation Order, in the event of default, "(i) . . . all obligations owing to [Iron Mountain], including principal and all accrued and unpaid interest, fees, costs, charges and attorney's fees, shall accelerate and become immediately due and payable; and (ii) the holder of the Class 1 Claim shall be permitted (a) to proceed with any and all legal rights and remedies in accordance with the Judgments, the secured lien, the Plan and the law."[1] *See* Confirmation Order. Iron Mountain filed to amend the state court judgment against SB to reflect the $2,200,000 balance due, which the state court granted. Iron Mountain then scheduled another sheriff's sale for October 10, 2018. Yet, again, just before the sale, SB filed for Chapter 11.

Under the 2015 Confirmation Order, in the event of a future insolvency proceeding, all parties agreed to suspend any automatic stay imposed under 11 U.S.C. § 362. To that end, Iron Mountain filed a motion for relief, which the Bankruptcy Court granted. The order prohibited Iron Mountain from executing a foreclosure sale prior to January 19, 2019, so that the Trustee could attempt to sell the Property at a higher value than Iron Mountain might obtain otherwise. A subsequent order extended the stay through September 30, 2019. When the Trustee failed to sell the Property before that date, Iron Mountain scheduled a third sheriff's sale for October 2, 2019. That sale, too, was postponed to October 30, 2019, then to November 20, 2019, and ultimately to January 8, 2020, to give the Trustee more time to market the Property. The Trustee secured a buyer at auction on December 17, 2019, for $3,200,000.

---

1   The "Class 1 Claim" refers to Iron Mountain's secured claim for $2,200,000 in connection with its extinguished mortgage.

On January 13, 2020, Iron Mountain filed a motion to compel the Trustee to pay from the proceeds of the auction sale, Iron Mountain's full secured claim, plus interests, attorneys' fees, and costs, totaling $2,375,288.01. In the same motion, Iron Mountain argued SB should pay the sheriff's fee of $46,791.91 for the foreclosure sale, which the auction obviated. After various cross-motions, the Bankruptcy Court approved the sale price on January 28, 2020, but did not decide Iron Mountain's motion for fees and costs, instead directing the Trustee to hold them in escrow pending a hearing.

On March 3, 2020, after a hearing, the Bankruptcy Court granted Iron Mountain's motion for fees and costs, and determined that SB must pay the sheriff's fee. The Bankruptcy Court rested its decision on three grounds. First, 11 U.S.C. § 506(b), rather than New Jersey Rule 4:42-9, governs the amount of attorneys' fees, because "a natural reading of [§] 506(b)" reveals "no reference to State law," the mortgage note survived the foreclosure judgment, and the merger doctrine does not "trump 506(b)." Second, the fees requested by Iron Mountain are "eminently reasonable," because SB has "chosen to make this . . . an expensive case" and "cannot now complain" about the costs undertaken by Iron Mountain in response. Third, it is "fair[]" to charge SB with the sheriff's fee because, if Iron Mountain had not decided to forego the sheriff's sale, then there would not be any money left for creditors besides Iron Mountain. *See* IM 163, at 17:17-25, 18:2-5, 18:2-25. The Bankruptcy Court accordingly entered an order directing the Trustee to pay Iron Mountain $2,375,288.01.

On March 16, 2020, SB appealed that order, which is presently before this Court. The parties' dispute boils down to three issues: whether they have an agreement for attorneys' fees under 11 U.S.C. § 506(b); if so, whether the attorneys' fees are reasonable; and whether, in any

4

event, the Bankruptcy Court erred in directing the Trustee rather than Iron Mountain to pay the sheriff's fee.

## II. LEGAL STANDARD

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a). *See also In re Walsh Trucking Co.,* 838 F.2d 698, 701 (3d Cir. 1988) ("We believe that the considerations that led this court to adopt the more flexible standards of finality in reviewing bankruptcy proceedings are equally applicable in the context of appeals of orders of the bankruptcy court to the district court."). The Court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

The Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard and legal conclusions under a de novo standard. *See id.*; *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997); *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995). A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Where an issue presents mixed questions of law and fact, the Court applies the relevant standard to each component of the issue. *Chemetron*, 72 F.3d at 345.

## III. DISCUSSION

SB argues on appeal that 11 U.S.C. § 506(b), which permits an over-secured creditor to recover reasonable attorneys' fees from a debtor, is not applicable because there is no agreement between the parties providing for attorneys' fees. Even if there is an agreement for attorneys' fees under § 506(b), SB argues that the Bankruptcy Court failed to adequately determine whether Iron Mountain's fee request is reasonable. In any event, SB argues that the Bankruptcy Court should

charge Iron Mountain, not SB, with the sheriff's fee. Iron Mountain disputes all three points. It argues that it is eligible for attorneys' fees under § 506(b) because the parties' various court orders constitute an agreement, that its fee request is reasonable because its actions in this litigation were defensive, and that SB should pay the sheriff's fee.

### A. Agreement Under § 506(b) for Attorneys' Fees

New Jersey courts follow the "American rule," where parties bear their own litigation costs, including attorneys' fees. *See, e.g.*, *McKeown-Brand v. Trump Castle Hotel & Casino*, 132 N.J. 546, 554-55 (1993); *A&P*, 467 F.3d at 341 (citing *McKeown-Brand*). Courts recognize two exceptions to this rule: where statutory provisions exist providing for fees and where a contractual provision allocates fees. *See Travelers Casualty & Surety Co. v. Pacific Gas & Elect. Co.*, 549 U.S. 443, 448 (2007) ("[A]n otherwise enforceable contract allocating attorney's fees (i.e., one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise."); *Smiriglio v. Hudson United Bank*, 98 Fed. App'x. 914, 915 (3d Cir. 2004) (enforcing contractual provisions for attorneys' fees "under [New Jersey] common law principles as a deliberate bargain between private parties"); *see also Regency Savings Bank, F.S.B. v. Morristown Mews, L.P.*, 363 N.J. Super. 363, 366 (App. Div. 2003) ("[C]ontractual fee-shifting agreements in the lender/borrower context are generally enforceable.").

New Jersey law contains a statutory provision providing for attorneys' fees in foreclosure actions. Specifically, Rule 4:42-9(a)(4) states that a plaintiff may recover up to $7,500 in attorneys' fees in a qualified foreclosure action. Federal law also contains a statutory fee provision, 11 U.S.C. § 506(b), which preempts state law where the value of a foreclosed property exceeds the value of an allowed secured claim. Under § 506(b), the holder of an allowed secured claim is entitled to "any reasonable fees, costs, or charges provided for under the agreement or State statute under

6

which such claim arose." *Id.* A creditor must satisfy four elements to be eligible for attorneys' fees under § 506(b): it must have a secured claim, it must be over-secured, its attorneys' fees must be reasonable, and its attorneys' fees must be provided for in an agreement. *See In re Kord Enterprises II*, 139 F.3d 684, 689 (9th Cir. 1998) (cited in *A&P*); *see also Ryker v. Current*, 338 B.R. 642, 648 (D.N.J. 2006) ("In general, for attorneys' fees and costs to be part of an allowed secured claim under this section, a creditor must be oversecured and the charges must be: (1) provided for under the agreement under which such claim arose; and (2) reasonable."). Here, since SB seeks review of the Bankruptcy Court's legal conclusion applying § 506(b), I review the issue de novo. *See Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988); *In re Morissey*, 717 F.2d 100, 104 (3d Cir. 1983); *accord Sheehan v. Dobin*, No. 10-6288, 2011 WL 3625586, at *2 (D.N.J. Aug. 15, 2011).

There is no dispute that Iron Mountain has a secured claim, since it had a lien on, and obtained a foreclosure judgment against, the property in which it has an interest. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 239 (1988) (defining a secured claim as a claim "by creditors against the estate that [is] secured by a lien on property in which the estate has an interest . . . to the extent of the value of the property on which the lien is fixed"). Iron Mountain is also clearly over-secured, since the property in which it has an interest sold at auction for $3,200,000, or $1,000,000 more than the amount SB owed to satisfy its claim. *See id.* (defining an over-secured claim as "any claim that is for an amount less than the value of the property securing it"). The parties' primary dispute centers on whether they have an agreement providing for attorneys' fees. The Bankruptcy Court found Iron Mountain to be entitled to attorneys' fees under § 506(b) for two reasons: § 506(b) does not "contain [any] reference to State law" and there continues to be a

binding "Mortgage Note which is the agreement under which such claim arose."[2] *See* IM 163, at 17:17-25, 18:2-5, 18:2-23.

SB argues that the Bankruptcy Court erred as matter of law by holding that the Mortgage Note survived the foreclosure judgment. According to SB, because its mortgage with Iron Mountain merged with the Superior Court's foreclosure judgment, it cannot constitute an "agreement" for attorneys' fees under § 506(b). Under the merger doctrine, contracts are deemed to merge with judgments, which prohibits a plaintiff from asserting a post-judgment claim based on the terms of a contract. *See In re Roach,* 824 F.2d 1370, 1377 (3d Cir. 1987) ("In New Jersey, as in many states, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished."); *see also A&P*, 467 F.3d at 341-42 (citing *Roach*). Here, the New Jersey Superior Court entered a foreclosure judgment against SB, which extinguished SB's mortgage with Iron Mountain. The mortgage along with its fee provision ceased to govern the parties' obligations at that time. *See In re Stendardo*, 991 F.2d 1089, 1094-95 (3d Cir. 1993) ("[I]t is elementary that judgment settles everything involved in the right to recover, not only all matters that were raised, but those which might have been raised. The cause of action is merged in the judgment which then evidences a new obligation.") (quoting *Lance v. Mann,* 360 Pa. 26, 28 (1948)). Without explanation, the Bankruptcy Court found the merger doctrine to be inapplicable and the Mortgage Note to survive the foreclosure judgment.[3] I cannot find any legal basis for that determination.

---

2      The Mortgage Note contains a provision providing for attorneys' fees.

3      Specifically, based on a general citation to *In re McCormick*, 894 F.3d 953, 957 (8th Cir. 2018), the Bankruptcy Court rejected that "the Merger Doctrine trumps [§] 506(b)." IM, 18:24-19:1. However, the Eighth Circuit in *McCormick* awarded attorneys' fees under § 506(b), because "an agreement in the confirmed bankruptcy plan provided for the payment of attorneys [sic] fees," not because the merger doctrine was in some way inapplicable in § 506(b) cases. 894 F.3d at 957. Indeed, in that case, the parties' bankruptcy plan, which was "created . . . well after the judgment liens were entered," along with "many agreements in which [the debtor] agreed to pay [the creditor's] attorney fees," constituted "the instruments under which [the creditor's] 'claim arose'" under § 506(b). *Id.*at 957-58.

The Third Circuit recognizes an exception to the merger doctrine. A provision in a mortgage can survive merger if "the mortgage clearly evidences [an] intent to preserve the effectiveness of that provision post-judgment." *In re Stendardo*, 991 F.2d at 1094. This is true even if the mortgage otherwise terminates. While acknowledging this exception, SB argues that it does not apply here. In its view, because its mortgage with Iron Mountain lacks an anti-merger provision, the Note does not establish any intent to preserve Iron Mountain's claim for attorneys' fees post-judgment. Iron Mountain fails to point to any other language in the mortgage suggesting a different result. *Id.* at 1095 ("No language appears in the Mortgage at issue here that indicates the parties' intent to preserve the Debtors' obligation . . . beyond the date of the Judgment."). Critically, Iron Mountain, as the mortgagee, could have protected its claim for attorneys' fees in the event of default by drafting language to that effect, and it assumed the risks associated with not doing so. *See id.* at 1096 ("The parties could have easily included such a provision in the Mortgage had this been their intent."). I, therefore, find that the mortgage merged with the foreclosure judgment, the exception to the merger doctrine does not apply, and the Bankruptcy Court incorrectly based Iron Mountain's entitlement for attorneys' fees under § 506(b) on the Mortgage Note.[4]

---

In fact, in discussing the merger doctrine, the *McCormick* Court stated only that it need not "parse[] into each of the documents that provided for fees," such as the original mortgage note or the foreclosure judgment itself, because "[i]n the final agreement between the parties, the McCormicks again agreed to pay reasonable attorney fees in the [confirmed bankruptcy plan]." *Id.* at 958. Thus, while the court in *McCormick* awarded fees under § 506(b), *see infra*, it does not do so for the reason the Bankruptcy Court found.

4       Iron Mountain also argues that the merger doctrine should not apply because "[o]ther courts . . . have examined the merger issue under New Jersey law and have found recovery of post-judgment legal fees to be appropriate." It cites *In Martino v. EverHome Mortg.*, 411 Fed. App'x. 508, 511-12 (3d Cir. 2010), for the proposition that "an exception to the Merger Doctrine applies when bankruptcy proceedings take place after a foreclosure judgement, but before the occurrence of a foreclosure sale," as here. While the Bankruptcy Court declined to "even enter that fray," IM, at 18:11-12, this Court does not read *Martino* as creating any such exception. *Martino* held that, when a foreclosure sale takes place after a foreclosure judgment, and a creditor already obtained attorneys' fees as part of the judgment based on a fee provision in its mortgage, "one would expect [the creditor] to incur expenses that were not included in the [] judgment," and *A&P* itself is not a bar to further recovery in such a case, nor does New Jersey Rule 4:42-9 "limit all fees a lender may recover while any foreclosure is pending." *Id.* The facts are far less

Notwithstanding the mortgage, Iron Mountain argues on appeal that either the Confirmation Order, the order instituting a stay against a foreclosure sale, or the order approving the auction sale establishes an agreement for attorneys' fees. *See* Opp. Br., at 29. Parties may revive the terms of an extinguished mortgage by post-judgment agreement. *See, e.g.*, *In re Stendardo*, 991 F.2d at 1095 ("[T]he parties agreed to revive the mortgage and note by an agreement . . . thereby reinstating the pre-existing terms and conditions."). Parties may also impose a new obligation for attorneys' fees by post-judgment agreement, regardless of whether they intended to revive a term in the extinguished mortgage. *See Ryker*, 338 B.R. at 649 ("This provision [in a Forbearance Agreement] clearly expresses the parties' intent to allow the [creditor] to pursue all of their rights under the Forbearance Agreement, including the receipt of attorneys' fees, should [the debtor] default under the agreement and a foreclosure sale occur."); *In re Olick*, 221 B.R. 146, 152 (Bankr. E.D. Pa. 1998) ("The allowance of attorneys' fees in a proof of claim is governed by section 506 of the Bankruptcy Code."); *supra*, note 3 (discussing *McCormick*, 894 F.3d at 957); *see also Ron Pair Enterprises*, 489 U.S. at 1030 ("The natural reading of the phrase [in § 506(b)] . . . gives one having a secured claim created pursuant to an agreement the right to recover reasonable fees, costs, and charges provided for in that agreement.").

The Bankruptcy Court did not rely on any court order to determine that Iron Mountain and SB have an agreement for attorneys' fees under § 506(b), but it could have relied on the Confirmation Order, which is designated as secured and asserts a total liability of $2,200,000 with the Property as collateral. Notably, the parties bargained for the provisions in the Confirmation Order, including the relevant fee agreement, by engaging in "considerable negotiation" as to the terms of repayment. The Bankruptcy Court then approved the plan. SB does not dispute that the

---

complicated here. Iron Mountain has made a single claim for all of its attorneys' fees post-judgment, and is barred by the merger doctrine from obtaining fees based on the Mortgage Note itself.

10

Order was the product of the parties' negotiated terms. Rather, SB claims that the Order is too general or vague to constitute an agreement for attorneys' fees in this context. That argument, however, is belied by the language of the Order itself. Specifically, the Order states that Iron Mountain is entitled to "*all* obligations . . . including . . . attorney's fees" in the event of default. *See* IM 100-1; IM 16-1; Ex. F; Opp. Br., at 32 (emphasis added). The Order also expresses the parties' intention to allow Iron Mountain to pursue recovery for the fees it incurs, stating that Iron Mountain "shall be permitted (a) to proceed with any and all legal rights and remedies in accordance with the Judgments, the secured lien, the Plan, and the law." *Id.* On January 1, 2018, SB defaulted on the Confirmation Order by failing to pay all outstanding principal and interest, a balloon payment that was due, because it failed to make a lump sum payment before January 15, 2016. Iron Mountain promptly scheduled a foreclosure sale, which it delayed only after reaching an agreement with the Trustee of SB's estate. As in *Ryker*, "should [SB] default under the agreement and a foreclosure sale occur," the Confirmation Order unambiguously grants Iron Mountain the right to recover attorneys' fees. 338 B.R. at 649. As such, I find that the Confirmation Order constitutes an agreement for attorneys' fees under § 506(b), and that Iron Mountain is not limited to the fees available under New Jersey Rule 4:42-9.

    B.  <u>Reasonableness of the Attorneys' Fees</u>

Section 506(b) fees must also be reasonable. SB argues that the Bankruptcy Court made two errors in connection with the reasonableness of Iron Mountain's fee request. First, SB claims that Iron Mountain acted unreasonably in litigating this matter, and thus, its legal fees are unreasonable. Second, SB argues that the Bankruptcy Court failed to adequately assess the reasonableness of $41,000 billed by a paralegal. *See* Reply Br., at 11; IM 163, at 13:1-14:7.

11

An over-secured creditor who has an agreement with a debtor for attorneys' fees is entitled to recover any reasonable fees. *See* 11 U.S.C. § 506(b). "Fee awards are reviewed for an abuse of discretion, which can occur 'if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award on findings of fact that are clearly erroneous.'" *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 257 (3d Cir. 1995) (quoting *Electro-Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356, 359 (11th Cir. 1994) (further citations omitted)).

A fee request is reasonable if both "the itemized fees themselves" and "the creditor's actions" in the litigation are reasonable. *In re West Elec., Inc.*, 158 B.R. 37, 40 (Bankr. D.N.J. 1993). To determine the reasonableness of a creditor's actions, a court considers "whether the creditor took the kind of reasonable actions similarly situated creditors would have taken, and whether such actions and fees were outside the range so as to be deemed unreasonable." *Id.* While attorneys' fees will not be denied solely because a creditor's legal actions were unsuccessful, the creditor "must not impede the debtor's reorganization by saddling the debtor with attorney's fees and expenses." *Id.* at 41. To determine whether the fees themselves are reasonable, a court looks to twelve factors: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.* at 42 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

In the proceeding below, the Bankruptcy Court determined that Iron Mountain's fees are reasonable because it undertook its actions in a "good faith attempt . . . to protect its claim during these eleven years of litigation."[5] IM 163, at 19-20. Although the Bankruptcy Court could have provided more in the way of analysis, its point is well-taken: virtually all of Iron Mountain's actions in this matter were defensive. Since 2011, Iron Mountain has defended an initial foreclosure judgment in state court, a Chapter 11 bankruptcy, a reorganization plan, a default on that plan, further state court litigation amending the foreclosure judgment and reorganization plan, a second bankruptcy proceeding, three District Court appeals, an appeal to the Third Circuit, and the present dispute. No doubt, Iron Mountain's actions were mostly "the result of actions taken by" SB, which a similarly situated creditor would reasonably undertake to protect its interests. *Ryker*, 338 B.R. at 652; *see also Mfr's Nat'l Bank v. Auto Specialties Mfg. Co.*, 18 F.3d 358, 362 (6th Cir. 1994) (holding that a secured creditor may incur attorneys' fees compensable under § 506(b) when it responds to litigation commenced by the debtor); *In re Cummins Util., L.P.*, 279 B.R. 195, 205 (Bankr. N.D. Tex. 2002).[6] The Bankruptcy Court certainly did not err in this respect.

The only conduct to which SB can point as potentially unnecessary, and unsuccessful, is Iron Mountain's decision to contest the Chapter 7 conversion. Even so, Iron Mountain did not undertake that action with the goal of disrupting SB's reorganization plan or saddling SB with fee-related debt, but rather to protect its claim, which could have been diminished in a Chapter 7

---

5    The Bankruptcy Court's full statement, entered into the record, is as follows: "As Iron Mountain extensively outlines in its papers, this is a far from ordinary case. There have been two bankruptcy filings, several actions in the State Court and several appeals up to and including to the Third Circuit. The equity holder has chosen to make this a [contention] and, therefore, expensive case. So it cannot now complain about the amount of the fees which were all undertaken in a good faith attempt by Iron Mountain to protect its claim during these 11 years of litigation." *See* IM 163, at 19-20. Iron Mountain's papers included a 104-page affidavit. *See* Opp. Br., at 41.

6    SB also apparently applied for a second mortgage on the Property, which it never disclosed in its first bankruptcy proceeding, "in an effort to cloud title," and challenged Iron Mountain's motion for relief from the automatic stay, a challenge which it waived in the Confirmation Order, both of which cost Iron Mountain "considerable time." *See* IM 163, at 5:12-25.

13

proceeding rather than repaid in a Chapter 11 proceeding. Iron Mountain then readily consented to SB's repayment plan and delayed four sheriff's sales between 2018 and 2020, such that the Trustee of SB's estate could sell the Property for more profit, despite having no legal obligation to do so. As the Bankruptcy Court noted, Iron Mountain's actions in this regard resulted in a sale price exceeding its secured claim by $1,000,000, which ensured a payout to SB's unsecured creditors as well as SB, and which satisfied all administrative costs. Accordingly, the Bankruptcy Court did not err in its determination that Iron Mountain acted reasonably in light of the circumstances created by SB. Like the Bankruptcy Court, I find no basis for penalizing Iron Mountain for defending its interests.

SB further argues that the Bankruptcy Court's reasonableness inquiry is inadequate, because the Bankruptcy Court failed to address SB's contention that "approximately $41,000" in fees billed by a paralegal are unreasonable. *See* IM 163, at 13:1-14:7. According to SB, these fees are unreasonable because they relate to administrative and clerical work, which is "law firm overhead" not "legal services," even if performed by a paraprofessional. Reply Br., at 12; Mot. to Remand, at 28. Iron Mountain disagrees, arguing that expenses incurred by paralegals are compensable (perhaps as a matter of law) because they conserve the debtor's estate. *See* Opp. Br., at 42-43; IM, at 15:16-20.

In analyzing a similar provision in the Bankruptcy Code, the Third Circuit rejected the categorical approach advanced by both parties here, where a court will "designate services as either clerical or paraprofessional and [] allow or disallow compensation for those services on the basis of such designation alone." *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 848 (3d Cir. 1994).[7]

---

7   While the Third Circuit's decision in *In re Busy Beaver* concerned a different, but related, bankruptcy provision, 11 U.S.C. § 330, which compensates the trustees of bankruptcy estates, it is nevertheless instructive here. *See Missouri v. Jenkins*, 491 U.S. 274, 283 (1989)(holding that "attorney's fees awarded under [fee-shifting] statute[s] are to be based on market rates for the services rendered.")

14

Instead, the Third Circuit held, "the bankruptcy court should review fee applications not for whether each particular service undertaken by a paralegal is clerical or paraprofessional by nature, but for whether non-bankruptcy attorneys typically charge and collect from their clients fees for that particular service when performed by a member of that profession, and the rates charged and collected therefor." *Id.* at 849. Because "the classification of services as clerical or non-clerical does not decide the question of compensability," *id.* at 851, and "clerical services may be compensated in the proper context," *id.*, the parties' dispute over whether the "expense of a paralegal is independent from administrative and clerical services which are deemed 'law firm overhead,'" Opp. Br., at 42, is irrelevant, and the answer to that question is not dispositive of whether the $41,000 paralegal fee in this matter constitutes a reasonable fee under § 506(b).[8]

In this matter, the Bankruptcy Court based its decision to grant Iron Mountain's attorneys' fees, including the $41,000 paralegal fee, on the fact that "this is a far from ordinary case." *See supra*, note 3. That arguably "distinguishes this case from those involving other secured creditors," *Ryker*, 338 B.R. at 653, and implicitly references several factors relevant in the reasonableness inquiry, such as the time and labor required to prosecute this case, the novelty and difficulty of the legal issues involved, the ability of the attorneys involved, and the undesirability of the case. But that is the extent of the Bankruptcy Court's analysis. There is no indication that the Bankruptcy Court considered the compensability of the $41,000 paralegal fee based on whether attorneys in the non-bankruptcy context generally charge their clients for that particular service, nor any indication that the Bankruptcy Court weighed the twelve-factor test. *See In re West*, 158 B.R. at

---

8   Indeed, the goal of the reasonableness analysis in connection with such a fee is not "compensating professionals or paraprofessionals solely for those services which just a professional or paraprofessional can provide, but instead . . . retaining competent legal representation for the debtor" by applying the billing practices of nonbankruptcy professionals. *In re Beaver*, 19 F.3d at 849-50.

42. Thus, despite the "substantial degree of discretion" granted to bankruptcy courts "in assessing the reasonableness of claimed fees and costs," *id.*, the Bankruptcy Court, here, failed to apply the proper legal standard or provide an adequate basis for reviewing the paralegal fee. *See, e.g.*, *Ryker*, 338 B.R. at 652.

Even if I had a better record before me, determining the reasonableness of the $41,000 fee is a factual inquiry, which this Court should not make on appeal. *See Ins. Co. of N. America v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118 (3d Cir. 1995) ("The bankruptcy court failed to make factual findings on these matters. We have consistently deferred to the fact-finding duties of the bankruptcy court and have held that where sufficient facts have not been developed by that court, the proper response is to remand."); *see also Wheeling-Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153, 163 (3d Cir. 1987); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150–51 (3d Cir. 1986). Accordingly, I remand for a determination of the reasonableness of the $41,000 paralegal fee.[9]

In sum, I find that the Confirmation Order constitutes an agreement for attorneys' fees under § 506(b), but I remand for further proceedings regarding the $41,000 paralegal fee.

C. Sheriff's fee

The final issue in this case is who should pay the sheriff's fee of $46,791.91, for the sheriff's efforts to conduct a foreclosure sale, notwithstanding the fact that those efforts were interrupted a number of times—when SB filed for bankruptcy initially, when it filed for bankruptcy a second time, and four times while the Trustee marketed the Property—and ultimately obviated

---

[9] As the Third Circuit has stated, however, the Bankruptcy Court need not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation. It . . . is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps even dwarfing the case in chief." *Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir. 1976) (en banc). "Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." *In re Busy Beaver*, 19 F.3d at 844-45.

when the Trustee satisfied the foreclosure judgment with proceeds from the auction. Iron Mountain argues that the sheriff's fee accrued when it scheduled the first sheriff's sale in 2013 and that SB must pay it. SB argues that the sheriff must look to the party who employed him to collect his fee, *i.e.*, Iron Mountain.

The Bankruptcy Court found that "under the circumstances of this case it is appropriate to escrow the amount of a potential Sheriff's fee because it cannot be overstated or stated too frequently that if Iron Mountain had not decided to forgo the Sheriff Sale and allow the property to be sold by the Trustee, . . . there would be no money for any [c]reditors of this [e]state or for the equity holder other than for Iron Mountain." IM, at 16-21. "So, fairness would dictate that the fees for a cancelled Sheriff sale, if any, should not be borne by Iron Mountain." *Id.* The Bankruptcy Court cited no support in reaching its decision, nor any reason why fairness should be the deciding factor.

N.J.S.A. 22A:4-8 governs sheriffs' fees in foreclosure actions. In relevant part, it provides that "[w]hen the execution is settled without actual sale and such settlement is made manifest to the officer, the officer shall receive 1/2 of the amount of percentage allowed herein in case of sale." N.J.S.A. 22A:4-8. Courts have found that "[a]n auction or private sale performed by a chapter 7 trustee, subsequent to the scheduling of a foreclosure sale by a sheriff, constitutes a settlement within the meaning of [the statute]." *In re Smith*, 599 B.R. 266, 271 (Bankr. D.N.J. 2019). That finding is consistent with the well-settled principle that "payment or satisfaction of a mortgage" and "anything . . . done between [the parties], by which a sale is rendered unnecessary, . . . must be considered a settlement." *In re Jones*, No. 06-16416, 2008 WL 3833425, at *3 (Bankr. D.N.J. Aug. 13, 2008); *Sturges v. Lackawanna & W.R. Co.*, 27 N.J.L. 424, 426 (1859) ("It is of no consequence to the sheriff how the matter is arranged between the plaintiff and the defendant. If

17

anything is done between them, by which a sale is rendered unnecessary, that must be considered a settlement within the meaning of the act."). Where a foreclosure sale is scheduled but subsequently obviated by settlement, then, "[t]he Sheriff is entitled to receive one-half of the statutory commission pursuant to the plain language of the statute." *In re Smith*, 599 B.R. at 271. The parties here do not dispute that the auction sale constitutes a settlement, nor that the sheriff is entitled to the statutory fee for his efforts.

The question is who should remit payment to the sheriff. N.J.S.A. 22A:4-8 does not provide an answer, nor is there any controlling case law from the Third Circuit or the New Jersey Supreme Court.[10] The case law that exists tends to support SB. For example, in *Howard Savings Bank v. Sutton*, 246 N.J. Super. 482, 587 (Ch. Div. 1990), the New Jersey Superior Court agreed that a sheriff "is entitled to be paid for his services by the seller, based on the proceeds of the sale," because the sheriff is simply "a public auctioneer whose fees and charges are fixed by statute . . . [and] deducted from the gross bid amount." *Id.* at 1335-36 ("The auctioneer usually looks to the seller for his compensation."). In this regard, a sheriff conducting a foreclosure sale is an agent of the foreclosing seller. *See, e.g.*, *In re Smith*, 599 B.R. at 274 ("The purpose of a sheriff's sale is so that a creditor can recoup money on a delinquent debt. During this process, the sheriff effectively serves as an agent of the creditor."). SB also finds support from *In re Loehwing*, 320 B.R. 281, 288 (Bankr. D.N.J. 2005). There, the bankruptcy court found that "where no money has been collected by the sheriff he must look to the party who employed him for his compensation."[11] *Id.* New Jersey

---

10     My determination of this state law issue constitutes a prediction of how the New Jersey Supreme Court would rule. *See Nationwide Mutual Ins. Co. v. Buffetta*, 230 F.3d 634 (3d Cir. 2000).

11     Iron Mountain contends that *Loehwing* supports rather than undermines its claim. *See* Opp. Br., at 47-48. It points to seemingly contradictory language in *Loehwing* stating that "the amount necessary to satisfy the foreclosure judgment may be increased by the sheriff's fees." 320 B.R. at 291. Iron Mountain interprets this language to mean that SB's estate must bear the sheriff's fee on top of the amount of Iron Mountain's secured claim. *See* Opp. Br., at 48. Iron Mountain's interpretation takes *Loehwing* out of context. Immediately before the language that Iron Mountain quotes, the court explained that "[t]he foreclosing mortgagee is liable for the sheriff's commission." *Id.* In view of that

18

state courts decisions interpreting N.J.S.A. 22A:4-8 further support SB's position that a sheriff must look to the mortgagee for the statutory fee. *See, e.g.*, *BTD-1996 NPC 1 L.L.C. v. 350 Warren L.P.*, 170 N.J. 90, 94 (2001); *Jacoby v. Eseo*, 329 N.J. Super. 119 (App. Div. 2000); *Resolution Trust Corp. v. Lanzaro*, 140 N.J. 244 (1995). In fact, a survey of New Jersey's 21 sheriffs conducted by a court-appointed expert in *Loehwing* found that 19 out of 21 sheriffs bill the plaintiff's attorney when asked "from whom do you seek payment?," which is exactly what happened in the present case: the sheriff sent its fee bill to Iron Mountain. Opp. Br., at 46. However, because the Bankruptcy Court did not mention any case law in its decision, I cannot say whether it overlooked this precedent, or found it inapplicable or unpersuasive for some other reason.

    Although the case law supports SB as to who should pay the sheriff's fee, the Bankruptcy Court also did not consider whether an agreement between the parties requires a different conclusion. For example, it is possible that the parties displaced the "seller pays" rule with their Confirmation Order, which grants Iron Mountain a right to all "fees, costs, charges, and attorneys' fees" in the event of default. IM 100-1; IM 16-1; Ex. F. That depends on whether the sheriff's fee constitutes a "cost" covered by the Confirmation Order. *See, e.g.*, N.J.S.A. 22A:2-8 ("A party to whom costs are awarded . . . is entitled to include in his bill of costs . . . Sheriff's fees for service of process or other mandate or proceeding."); *In re Smith*, 599 B.R. at n.3. The Bankruptcy Court did not discuss the Confirmation Order in this context; as such, this Court has no basis to review the decision, even under a deferential standard of review. Neither did the parties adequately brief the issue such that I can independently make a decision on this appeal. Because the outcome of this inquiry may involve factual findings, and because the issue should be resolved by the

---

holding, the only plausible reading of the quoted language is that a sheriff's fee is *included* in the amount necessary to satisfy the foreclosure judgment, effectively reducing the amount of the secured claim by the amount of the fee. *See id.* at 290. The decision cannot be read to mean that the sheriff's fee is *added* to the secured claim.

19

Bankruptcy Court in the first instance, I remand for further proceedings regarding who should pay the sheriff's fee based on the parties' understanding of the Confirmation Order.

## IV. CONCLUSION

For the aforementioned reasons, I find that the Confirmation Order constitutes an agreement for attorneys' fees under 11 U.S.C. § 506(b), but I remand for a determination of the reasonableness of the $41,000 paralegal fee and who should pay the sheriff's fee. Accordingly, the Bankruptcy Court's decision is **AFFIRMED** in part and **VACATED** in part.

Dated: November 16, 2020  /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
Chief Judge